## NEW ORLEANS, FEBRUARY, 1846.

PRESENT:

Hon. THOMAS C. NICHOLLS.

Hon. GEORGE ROGERS KING.

Hon. WILLIAM D. BOYLE.

---

THE STATE *v.* EZEKIEL FERGUSON.

8r 613
51 1087

8r 613
119 299

In a prosecution for murder where the court is satisfied that the jury cannot agree in a verdict, it may discharge them, though the prisoner oppose it, and may direct a trial before another jury.

APPEAL from the District Court of East Baton Rouge, *Boyle,* J.
*Preston,* Attorney General, for the State, cited 4 Black. 355. Chitty, 376. *United States* v. *Coolidge,* 2 Gallison, 364. *The People* v. *Goodwin,* 18 Johns. 200. *The People* v. *Green,* 13 Wend. 56. *Commonwealth* v. *Bowden,* 9 Mass. 494. *United States* v. *Perez,* 9 Wheat. 580. *State* v. *Brown, ante,* p. 566.
*Burk,* for the appellant.

NICHOLLS, J. The accused, charged with the crime of murder, invokes the aid of this court to release him from all further prosecution, in consequence of the court, *a qua,* having discharged the jury empannelled to try him; the said jury not having been able to agree upon a verdict.

The record shows, that on Saturday, the 24th of January last, upon the trial of this case, the jury having come into court and stated the impossibility of their agreeing upon a verdict, it was ordered by the court, the prisoner dissenting, that a juror be with-

drawn and a mis-trial entered.   This dismissal of the jury, in op-
position to the wishes of the accused, is considered by his coun-
sel as equivalent to an acquittal, and that he cannot be legally
called upon to answer to the charge, before another jury.

To deny to courts, in *all* cases, the right to discharge a jury,
when no verdict can be had, would lead to consequences so ca-
lamitous and unjust, and would tend so frequently to defeat the
ends for which courts are instituted, that we should hesitate long
before adopting such conclusion.   Nothing short of the most im-
perative, positive, and unequivocal mandate of the law, could
constrain us to sanction a doctrine, where the law would be on
the one side and reason on the other.   Aware of this result from
the consideration of the principle *in extenso*, the right to discharge
the jury, in certain excepted cases, is conceded to the court; but
is to be confined and restricted, according to the argument of the
counsel of the accused, to cases of *absolute necessity*.   This con-
cession or partial adoption of the principle, which was too palpa-
bly self-evident not to be admitted, covers the whole ground, and
reduces the matter to the simple question, *necessitas vel non ?*
Of the existence of this necessity, the court must *necessarily* be
the judge—an authority to be exercised in *all*, particularly in
*capital* cases, within the limits of a sound legal discretion.
The power to apply the remedy, *must* be lodged *somewhere*,
else courts would be converted as often into snares for the
innocent, as engines for the punishment of the guilty ; and it
can be lodged only with the *court*, before whom the trial is had.

Without straining the imagination in search of cases illustra-
tive of the principles involved in this investigation, the books
furnish ample materials to guide the courts in the exercise of this
delicate power.   In the case of *The King* v. *Edwards*, (4 Taunt.
Rep. 309,) the words of the court are as follows ; "One of the
jurors fell down in a fit, and was pronounced by a physician,
under oath, incapable of proceeding on the trial, on that day,
whereupon the jury was discharged.   The point being argued
before all the judges in England, (except Mansfield,) the judges,
without hearing the counsel for the crown, said, that it had been
decided in so many cases, it was now the settled law of the
country," and gave judgment accordingly.   So in the case of
*The King* v. *Stephenson*, (Leach's C. C. 618 ;) "The *prisoner*
fell down in a fit during the trial, and the jury was discharged ;
and, upon his recovery, he was tried and convicted by another
jury."   In the case of *The United States* v. *Coolidge*, (2 Galli-
son's Rep. 364,) a witness refusing to be sworn, the trial was sus-
pended during the imprisonment of the witness for contempt;
and Mr. Justice Story held, that the discretion to discharge a

jury existed in all cases, but that it was to be exercised only in very extraordinary and striking circumstances.

These citations are considered sufficient to point out to the court which tries a prisoner, the limits beyond which it should not go, in the exercise of its discretion. The sessions of the District Court in the parish of Ascension, (and probably some other parishes in the State may be in a like situation,) are limited by law to a *single week*, and the judge who there presides is likewise the judge of the District Court of the adjoining parish of St. James, whose sessions commence on the following Monday. Granting to the accused in a capital case in the *former* parish, the delays necessary to furnish him a copy of the indictment and the panel of the jury, (and of these delays he cannot be deprived,) it is manifest, that in almost every instance, it would be equivalent to a verdict of acquittal, if you withhold from the court the power to discharge the jury, in case of disagreement. It would be a proclamation to the guilty, that impunity was certain, and secured by the mere employment of counsel for the purpose of speaking against time, of spinning out the argument, and occupying the time of the court until the clock struck the fatal hour of twelve on Saturday night, when court and jury, judge and juryman, would all vanish, by the fiat of the law, leaving the guilty one alone, washed from the consequences of his crime, reintegrated in his privileges as a citizen, and let loose upon society to repeat similar atrocities, with a similar result; for it should not be forgotten, that, in the United States, the judges are not clothed with the same authority (which the exigencies of an age of barbarism formerly conferred upon the judges in England,) of trundling the jury after them, from county to county and from circuit to circuit, until they could agree, in hampers or baskets made expressly for the purpose—a happy invention truly, and wonderfully well adapted to ensure unanimity, and to afford an unerring and certain test of innocence or guilt. These absurdities have disappeared before the advancing light of reason and of law; and the boast of English jurists, that the common law of England is the perfection of reason, is vindicated and approved by rejecting and repudiating them as having never constituted part or parcel of the same.

Error, however sanctified by authority, or hoary by time, cannot be permitted to invoke the antiquity of its existence as a justification of its aberrations, but, on the contrary, should be renounced whenever and wherever it is discovered to lurk. *Malus usus abolendus est*, says the same common law, with regard to *customs;* a like sentence should be pronounced against error when detected.

*Many* of the early, *all* of the modern decisions in England and

the United States, accord to courts the power exercised in the present instance. Justice could not be administered *without* it. The amount of *fancied* evils flowing, as it is alleged, from the concession of such power to courts of justice, would be more than compensated by the possible, probable, nay, positive infliction of wrong upon the unhappy class of persons themselves, for whose benefit and protection the rejection of the power is now invoked. In fine, we adopt the language of 'Judge Story, in the case of *The United States* v. *Perez*, 9 Wheat. 580, as comprehending all the law on the subject. " We think that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated; they are to exercise a sound discretion on the subject, and it is impossible to define all the circumstances which would render it proper to interfere; to be sure, the power ought to be exercised with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner; but after all, they have the right to order the discharge, and the security which the public have for the faithful, sound, and conscientious exercise of this discretion rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office."

Wherefore it is ordered that this case be remanded, that a *venire de novo* be awarded, and that the court, *a qua*, proceed in the premises according to law, and agreeably to the principles herein established.